Gary L. Snyder, MD(ret.), RVT
62 N Sunbear Dr.
Philipsburg, MT 59858
Telephone:  (763) 331-2266
Email:     fedctmt@yahoo.com
*Plaintiff Pro se*

# FEDERAL DISTRICT COURT

## DISTRICT OF MONTANA

## MISSOULA DIVISION

| | |
|---|---|
| GARY L. SNYDER<br>Elected Local Government<br>Study Commissioner<br> *Plaintiff* <br> v. <br><br>SCOTT C. ALDER<br>Granite County Commissioner,<br>Chairman<br>Individually, Personally, and Officially<br><br>PAUL G. KULASKI<br>Granite County Commissioner<br>Individually, Personally, and Officially<br><br>BLANCHE McLURE<br>Granite County Commissioner<br>Individually, Personally, and Officially | **CASE No.:**<br><br><br><br>**42 USCA §1983**<br>**COMPLAINT,**<br>**DEMAND FOR IMMEDIATE**<br>**TEMPORARY**<br>**INJUNCTION,** |

BLAINE BRADSHAW
Granite County Attorney
Individually, Personally, and Officially

LUKE ULATOWSKI
Appointed Local Government
Study Commissioner
Individually and Personally

GAIL LEEPER
Resigned/Former Local Government
Study Commissioner; Mayor of
Drummond
Individually, Personally, and Officially

ROBIN WIGHT
Resigned/Former Local Government
Study Commissioner; Treasurer of
Drummond
Individually, Personally, and Officially
                                    *Defendants*

**AND DEMAND FOR
JURY TRIAL**

## I. JURISDICTION

This Court has Jurisdiction pursuant to 28 U.S.C. 1343 and 28

U.S.C.

1331 for acts committed "under color of state law" through the Fifth

Amendment and the Fourteenth Amendment, of the United States

Constitution.

## II.  HISTORY OF THE CASE

The Plaintiff realleges and incorporates the preceding paragraph. ARTICLE XI is the definitive and supreme law regarding the review of local governments on a decennial basis, *to wit*:

> *"Section 9. Voter review of local government.*
> *(1) The legislature **shall** (emphasis added), within four years of the ratification of this constitution, provide procedures requiring each local government unit or combination of units to review its structure and submit one alternative form of government to the qualified electors at the next general or special election.*
> *(2) The legislature **shall** (emphasis added) require an election in each local government to determine whether a local government will undertake a review procedure once every ten years after the first election. Approval by a majority of those voting in the decennial general election on the question of undertaking a local government review is necessary to **mandate the election of a local government study commission** (emphasis added). Study commission members shall be elected during any regularly scheduled election in local governments mandating their election. History: Amd. Const. Amend. No. 6, approved Nov. 7, 1978."*

A general election, following a prior separate election to review the present form of government, was held in November 2024. Four candidates ran in that election, and pursuant to the Montana Constitution, the three candidates receiving the most votes were

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

deemed **elected** to the Local Government Study Commission. The newly elected commissioners, listed in alphabetical order, were Defendant Leeper, Plaintiff Snyder, and Defendant Wight. The newly elected commissioners were required to take an oath as specified in the Montana Constitution within 10 days of the election and before convening any formal open-law meetings. All of this background will become integral to the present Section 1983 Civil Rights lawsuit.

An initial meeting was held by the Granite County Commissioners (Adler, Kulaski, and McLure, hereinafter collectively referred to as the GCCs) to announce the newly elected Local Government Study Commissioners (LGSCs). A motion was made to elect a temporary Chairman. Defendant Wight motioned to place Defendant Leeper in that position, and the vote was unanimous among the newly elected LGSCs. Defendant Leeper assumed the chair position and called a meeting on December 23, 2025, to serve as the commission's initial meeting.

Shortly after the opening of the first meeting, Defendant Leeper was nominated as chairperson by Defendant Wight. Defendant Leeper then nominated Defendant Wight as Secretary. A vote was taken, and Defendants Leeper and Wight voted themselves to the positions. Plaintiff, Commissioner Snyder, abstained.

Defendant Leeper acrimoniously challenged Commissioner Snyder, alleging that Commissioner Snyder lacked governmental experience. Commissioner Snyder responded that Defendant Leeper was incorrect in her assumption. Commissioner Snyder stated that during his 30-year-plus practice of medicine and surgery, he served on high-level committees at two of the largest hospitals in the Denver area and testified numerous times before the Colorado Legislature on issues and laws related to the practice of medicine and surgery. These discussions and comments, involving Defendant Leeper and Plaintiff Snyder, were recorded and will be used as facts before the jury. *Plaintiff's Exhibit # 1 - Tape*

*Recording, alleged to be certified by Leeper of all meetings of the original elected Commissioners.*

The remainder of the meeting was spent instituting Unit One of the six-week study program outlined by the Montana State University Division of Local Government Studies (hereinafter MSU). MSU has been involved in this type of activity and offering services to help duly elected government officials discharge their elected duties in a meaningful way for more than 40 (forty) years.

A full-day seminar was required, followed by six weeks of intense study with materials produced by MSU. The cost to taxpayers was $ 1,500 per Commissioner, plus travel expenses. Commissioner Snyder attended the seminar in Bozeman, Montana, while the other two Commissioners attended one in a different location. *Plaintiff's Exhibit # 3, Montana's Local Government Voter Review, 2024 – 2026 6th cycle', Study Commission Orientation December 2024, pages 1-6, 9-16, 18-32, 35-37, and footnote at the bottom of page 38.*

The process was an intense introduction to Montana local government. The 1972 Montana Constitution allowed local governments to change from a traditional form of government (three elected commissioners, AKA the Elected County Official Form (ECOF)) to a shared form (with the State of Montana), offering self-governance and significant benefits.

On March 20, 2025, at the third meeting of the Granite County Local Government Study Commission (hereinafter LGSC), a discussion centered on the functioning of the LGSC. There was considerable disagreement over the use of distributed questionnaires versus more aggressive forms of education.

At the time of the scheduled March meeting, it was presumed that all commissioners had completed their intensive study of the approach to evaluating local governments. During that meeting, it became clear that Defendants Leeper and Wight had significantly different approaches to the study group's

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

constitutionally mandated functions. Commissioner Snyder had written to the state of Montana and obtained pocket copies of the United States and Montana Constitutions, presenting a copy of each to Defendants Leeper and Wight. As a result of the contentious discussions, Commissioner Snyder was unknowingly being set up for removal from the LGSC.

At the fourth meeting in April, Defendant Bradshaw appeared at the unknown request of Defendants Leeper and Wight. His attendance, presumably as a representative of the public, was a planned conspiracy intended to coerce Commissioner Snyder into following their directions for the commission's functioning, or face removal from the LGSC. All of these meetings had been recorded by Defendant Lepper and will be available for the jury to evaluate. Defendant Bradshaw stated at that meeting that Commissioner Snyder was to follow the rules of committee function established by Defendant Leeper, or he would be removed from the committee. It has since been discovered that Bradshaw was asked to coerce

Commissioner Snyder into accepting the intent of functioning as presented by the other two Commissioners and ignore the legal and recommended aspects of the Constitutional Decennial review set forth in *Plaintiff's Exhibit # 4 – Ex # 3 Montana's Local Government Voter Review, 2024 – 2026 6th cycle, pages 5-12.* Commissioners Leeper and Wight attempted to reduce the Study Commission's function to obtaining the electorate's thoughts and desires, without the benefit of being educated about the benefits of Constitutional mandates. Without such education, the efforts would be futile.

Resulting from Defendant Bradshaw's threats, Commissioner Snyder undertook a review of Montana law relating to elected officials. That legal research resulted in the production of *Plaintiff's Exhibit #2 Notice of Impending Suit RE: Constitutional Violations, and Exhibit # 5, Memorandum RE: Elected Commissioner for Decennial Government Review.* Copies were sent to Bradshaw, the other two Commissioners, and the three GCCs as the first official notice of the lack of authority to remove Commissioner Snyder.

Additionally, it was noted that Ms. Gagliano received votes in the election and was available to be appointed, making a quorum until a third member could be appointed.

The study of the Montana Constitution and the Montana Code Annotated (MCA) offers a unique opportunity to explore potential improvements to Montana's governance and legal framework. This study has been enhanced by the development of critical thinking skills, resulting from over 30 years of legal exposure, including the practice of medicine and surgery, as well as from Commissioner Snyder's Montana certification as a teacher. Commissioner Snyder's emphasis has been, and continues to be, on enlightening and educating voters about the benefits of self-governance through personal interactions and other productive actions compared to the existing general powers form of ECOF.

It was reprehensible, as well as arbitrary and capricious, for the GCCs, Adler, Kulaski, and, McLure to consider impeaching Commissioner Snyder for purely political reasons, including retaliation for filing a Writ for Mandamus in the District Court for the benefit of the LGSC. *Plaintiff's Exhibit # 6a, Complaint – Writ for Mandamus, 6b, Summons, 6c Form 18 acceptance without personal service, and Exhibits 1 – 14, 6d, and 6e, and Motion and Order for Dismissal, 6f, resulting in the complaint being MOOT after the*

*removal of Commissioner Snyder.* Their failure to follow the Montana

Constitution and Statutes was a wanton, egregious assault on democracy, *to*

*wit:*

> **MCA *"45-7-401. Official misconduct***
>
> *(1) A public servant commits the offense of official misconduct when in an official capacity the public servant commits any of the following acts:*
> *(a) purposely or negligently fails to perform any mandatory duty as required by law or by a court of competent jurisdiction;*
> *(b) knowingly performs an act in an official capacity that the public servant knows is forbidden by law;*
> *(c) with the purpose to obtain a personal advantage or an advantage for another, performs an act in excess of the public servant's lawful authority;*
> *(d) solicits or knowingly accepts for the performance of any act a fee or reward that the public servant knows is not authorized by law; or*
> *(e) knowingly conducts a meeting of a public agency in violation of 2-3-203;*
> *(2) A public servant convicted of the offense of official misconduct shall be fined not to exceed $500 or be imprisoned in the county jail for a term not to exceed 6 months, or both.*
> *(3) The **district court has exclusive jurisdiction in prosecutions under this section** (emphasis added). Any action for official misconduct must be commenced by an information filed after leave to file has been granted by the district court or after a grand jury indictment has been found." Plaintiff's Exhibit # 7, (Pl. Ex. 4 - Memorandum RE: Elected Commissioner for Decennial Government Review) p 3 & 4.*

The GCCs,s are NOT JUDGES and their action to "remove"

Commissioner Snyder violates the Montana Constitution, and their sworn

oaths' to uphold the Constitution, MCA 47-7-401, Official Misconduct, and the

Montana Supreme Court, under the color of state law, *to wit:*

*"However, malfeasance or misfeasance is not a ground for recall in Montana. 34 In 1979, the Montana Recall Act was amended by removing malfeasance and misfeasance, and inserting official misconduct as a ground for recall. We presume that the legislature, in adopting an amendment to a statute, intended to make some change in existing law. Montana Milk Control Board v. Community Creamery Co. (1961), 139 Mont. 523, 366 P.2d 151. That presumption is especially applicable where, as here, the amendment materially \*145 changes the statutory provisions. We believe the legislature intended to change the law regarding grounds for recall by substituting official misconduct for malfeasance or misfeasance."* Foster v. Kovich, 207 Mont. 139, 139–51, 673 P.2d 1239, 1239–46 (1983)

Instead of following the Law, the GCC's actions were spuriously, knowingly, and wantonly in violation of MT law and the Montana Constitution, after notification by mail by Commissioner Snyder. The GCCs have pursued their own political retaliation against Commissioner Snyder, under the color of state law, and have subjected themselves to substantial compensatory and/or punitive damages for their disrespect for the Montana Constitution and the MCA's Title 7 *et seq. Plaintiff's Exhibit # 8 MCA Title 7- 101-192 and related statutes.*

There appears to be no constitutional or case law authority for impeachment other than MCA 45-7-401 for removal/impeachment of an elected official by the GCCs, Adler, Kulaski, and McLure. See *Plaintiff's Exhibit # 9 (Pl. Ex 4 - Memorandum RE: Elected Commissioner for Decennial*

*Government Review), page 3, paragraphs two and three and the entirety of page 4.*

## III.    FRCP Rule 8 STATEMENT

The Plaintiff realleges and incorporates the preceding paragraphs. 42 USCA Section 1983 involves Civil Rights Violations pursuant to the Fourteenth Amendment, invoking the Fifth Amendment, *to wit*: First Amendment Violations, Equal Protection Violations, Failure to Afford Substantive Due Process, Failure to Afford Procedural Due Process, Montana Constitution Violations of the Torts, Libel and Slander. Each violation is henceforth detailed by the numbered counts.

## IV. COUNT ONE – FIRST AMENDMENT VIOLATIONS

The Plaintiff realleges and incorporates the preceding paragraphs. ARTICLE II, Sections 7 Freedom of Speech and Section 8 Right to Participation, Montana Constitution, and AMENDMENT I, United States Constitution prohibiting repression of free speech and expression related thereto.  The seminal case defining the interpretation of law is *Marbury v. Madison, 5 U.S. 137 (1803)*. Both the US and MT Constitutions make clear the fact that they alone are the Supreme Law of the Land and take

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

precedence over the assertion by Defendants Bradshaw and the GCC's Adler, Kaluski, and/or McLure that they alone, pursuant to some unnamed fictional MCA, can act without the involvement of a Judge.  Repression, suppression, and attempts to silence a duly elected voice of the people by removal/impeachment of Commissioner Snyder by any means other than MCA 45-7-401 - Official misconduct, is strictly forbidden.

Only where society is drastically threatened may the government punish a duly elected voice of the people. Justice Brandeis phrased his opinion that "Only an emergency justifies repression." *Whitney v. California*, 274 U.S. 357 (1927).  Bradshaw and the GCC's Adler, Kaluski, and McLure have not, and cannot, advance even a scintilla of evidence to substantiate their spurious, reprehensible, illegal action, and the unconscionable manner in which they alone would be the judge, jury, and executioner of Commissioner Snyder. Their actions were simply due to their personal fear of changes that might eliminate their positions, resulting from Commissioner Snyder's tenacity, his duty to the MSU training, and his respect for Constitutionally following the will of the people. This type of action has and continues to be prohibited pursuant to *In RE Murchinson*, 349 U.S., 133, 136, 75 S. Ct. 623, 625 (1955), which remains the basis of judicial fairness. *Plaintiff's Ex. # 10, (Pl. Ex. # $ MSU*

*Local Government Review Study Commission Guide) pages 9-10, Scope of Montana's Local Government Review.*

A legislator, let alone a Granite County Commissioner, pursuant to Justice Scalia, is barred from interpretation of constitutional law, *Nevada Commission on Ethics v. Carrington*, 564 U.S. 560 (1991). This reprehensible action should be grounds for removal from office for Defendants Bradshaw and the Defendant GCCs Adler, Kaluski, and McLure, resulting from their flagrant disregard for both the U.S. and Montana Constitutions. "*A system which secures the right to proselytize religious, political, and ideological causes must also guarantee the right to decline to foster such beliefs.*" *Wooley v. Manard*, 430 U.S. 705 (1977).

Despite this egregious attempt to silence Commissioner Snyder he still remains the only elected official for this Constitutionally Mandated LGSC. Commissioner Snyder must be restored to his elected position and complete his two-year term of office as Constitutionally Mandated.

1) **HISTORY OF THE FIRST AMENDMENT – FUNDAMENTAL LIBERTY INTEREST CREATED BY THE FOUNDING FATHERS**

…"The First Amendment today protects the overlapping realms of the spirit— of belief, a motion, and reason— and of political activity against intrusion by the government (**emphasis added**). The amendment directly

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

forbids federal violation of the individual's RELIGIOUS LIBERTY, freedom of expression, FREEDOM OF ASSEMBLY, and **associated political liberties** (emphasis added). The amendment indirectly forbids state violation because it is held to be incorporated into the FOURTEENTH AMENDMENT's restrictions upon the powers of the states. The body of law presently defining First Amendment liberties has been shaped not so much by the words or intent of the original sponsors as by the actors and events of a much later history. The story is one of continued expansion of individual freedom of expression, of freedom of the press, and, until 1980, of widening SEPARATION OF CHURCH AND STATE. "*Encyclopedia of the AMERICAN CONSTITUTION*, volume 3, second edition, edited by LEONARD W. LEAVING, and KENNETH L. CARS, copyright 2000 by Macmillan reference USA, FIRST AMENDMENT, author ARCHIBALD COX (1986), pages 1045 through 1052".

## 2) HISTORY OF FREEDOM OF SPEECH – FUNDAMENTAL LIBERTY INTEREST CREATED BY THE FOUNDING FATHERS

…"" **Section** Freedom of speech is guaranteed in the American Constitution by the FIRST AMENDMENT. Adopted in 1791 as the first provision of the BILL OF RIGHTS, the First Amendment reads (excluding the clauses on religion): "Congress shall make no law… Abridging the freedom of speech, or of the press, or of the right of the people peaceably to assemble,

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

and to petition the government for a redress of grievances." Although the provision names for specific rights – – freedom of speech, FREEDOM OF THE PRESS, FREEDOM OF ASSEMBLY, and FREEDOM OF PETITION – – the several guarantees have never been clearly differentiated; rather, the First

Amendment has been construed as guaranteeing a composite right to freedom of expression. The term "freedom of speech" therefore, in popular usage as well as and legal doctrine, has been considered roughly coextensive with the whole of the first amendment."" *Id.*, *Encyclopedia of the AMERICAN CONSTITUTION, FREEDOM OF SPEECH*, page 1132, Author, Thomas I. Emerson (1986).

… "FREEDOM OF SPEECH (Update 2). Questions about freedom of speech can be divided into questions of coverage (or scope) and questions of protection (or strength). The question of coverage is the question, logically primary, whether some act, event, behavior, state of affairs, or case is indeed a free speech case at all. The question of protection, which follows, is the question of how much protection against legislative, executive, or judicial control an act has by virtue of the decisions that it is an act covered by the concept of freedom of speech and thus covered by the free speech clause of the FIRST AMENDMENT." *Id.*, *Encyclopedia of the AMERICAN*

*CONSTITUTION, FREEDOM OF SPEECH*, page 1135, Author Frederick

Shauer (2000).

### 3) PERSECUTION AND THE ULTIMATE ACTION BY DEFENDANTS BRADSHAW, ADLER, KULASKI, LEEPER, MCLURE, ULATOWSKI, LEEPER, AND WIGHT ATTEMPTING TO SILENCE COMMISSIONER SNYDER POLITICALLY UNDER THE COLOR OF STATE LAW

**Correspondence Dated July 15, 2025**

"At a regularly scheduled public meeting held on **July 8, 2024**, in the Granite

County Courthouse in Philipsburg, the Board of County Commissioners – –

comprising Commissioners Adler, McLure, and Kulaski – – **unanimously**

**voted to remove you** from your *appointed* (emphasis added) position on the

Study Commission."… *Plaintiff's Exhibit # 11, Removal Notification of*

*Commissioner Snyder from the Local Government Study Commission ¶1.*

**N.B.:  Commissioner Snyder was duly <u>Elected, pursuant to a</u> <u>Constitutional Mandate,</u> in a regular voting cycle by the electorate of Granite County in November 2024 pursuant to ARTICLE XI, Section 9, Sub Sections 1 and 2, *to wit*:**

As documented herein, pursuant to "ARTICLE XI, LOCAL

GOVERNMENT, Section 9, VOTER REVIEW OF LOCAL

GOVERNMENT, Subsection (1) The legislature **shall** (emphasis added),

within four years of the ratification of this constitution, provide procedures

**requiring** (emphasis added) each local government unit or combination

of units to **review its structure** (emphasis added) and submit one alternative form of government to the qualified electors at the next general or special election. Subsection (2), the legislature **shall** (emphasis added) require a review procedure once every 10 years after the first election."

The Montana Constitution is the "Supreme Law in Montana" (Mont. *Cannabis Indus. Ass'n v. State* 366 Mont. 224, 240-41, ¶ 51-52 (2012), as the United States Constitution is the ultimate law (*Associated Press*, 246 Mont. at 391, 804 P.2d at 379) of the United States, which pursuant to ARTICLE I and a COMPACT WITH THE UNITED STATES.. The Montana Supreme Court has further adjudicated that the Montana Constitution is to be read in accordance with the plain English language of the United States, without any embellishment or interpretation, and without a strict necessity to alter its terms. *Nelson v. City of Billings*, 390 Mont. 290, 296 (2018).

Accepting the Dictum of the foregoing constitutional language, Defendants Bradshaw, Alder, Kulaski, and McLure have absolutely no authority under the Constitution or the Montana Code Annotated, the provider of statutes of the general powers delineated in the Elected County Office Form (ECOF) of government, which has been provided through Statutes enacted by the Montana Legislature. The Granite County

Commissioners are not kings and must abide by the general power statutes provided to them by the Montana Legislature.

> Negative " In Bynum v. Strain, 95 Okla. 45, 218 P. 883. * * * The elective officer is responsible directly to the electorate; he is elected by the voters, and the public has a right in his tenure of office, a right **which can be properly determined by the courts only** (emphasis added), and the courts have universally and very properly so held." State ex rel. Bonner v. Dist. Ct. of First Jud. Dist. in & for Lewis & Clark Cnty., 122 Mont. 464, 481–82, 206 P.2d 166, 175 (1949).

The election is a Decennial Constitutional Mandate that allows a large portion of the electorate to have significant influence over the manner and the persons elected. The Montana Constitution states explicitly that the executive branch, County Commissioners, cannot serve as commissioners of the study commission to preserve a grassroots review of alternative Powers, Forms, and Plans.

> ..."This decision followed an extended period during which concerns were brought to the board's attention, including reports of interpersonal conflicts, procedural issues, and disruptions that affected the Commission's ability to fulfill its mandate.
> While we acknowledge your engagement with the review process and the importance of diverse perspectives, the Board determined that the Commission's effectiveness and stability required a change in its membership. The decision was made in the interest of restoring functionality and promoting constructive collaboration among the remaining members." Plaintiff's Exhibit # 12, (Pl. Ex. #11, Removal Notification of Commissioner Snyder from the Local Government Study Commission ¶ 2).

## 4.    Conspiracies and Testimonial Allegations Used to Persecute

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

**A Commissioner Snyder During Granite County Commissioners' Meetings May 6, 2025, Through July 8, 2025, to Silence Free Speech and Expression for Commissioner Snyder and Commissioner Snyder's Responses**

a)      April 17, 2025, at a Regular Government Study Commission Meeting, an issue was presented concerning contacts and protocols for the Study Commission member interactions. Commissioners Leeper and Wight, the Mayor and Clerk/Treasurer, respectively, of the small town of Drummond, MT, insisted on having NO communication among commission members to avoid violating the open meeting statute. That turned out to be a moot concern.

The part-time, elected county attorney, Defendant Bradshaw, appeared at the request of Leeper and Wight under the false pretense of being a member of the public to coerce the acquiescence of Commissioner Snyder to bend to their will regarding the functioning of the study commission. During the meeting, Bradshaw began attempting t she o interfer with the commission functioning, espousing his "professional opinion" of how he thought the Commission should operate. At one point, he confronted Commissioner Snyder, threatening to remove him from his elected position *Plaintiff's Ex. # 13, (Pl. Ex. # 1, Recorded LGSC meeting April 17. 2025)*. The threat

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

was made. Bradshaw had conspired with Leeper and Wight. He acted out of ignorance of the MSU materials, without even a scintilla of knowledge of the MSU Study guide, and demonstrated a lack of authority for his contumelious actions, *to wit:*

"¶8 "*The subject matter jurisdiction of Montana district courts derives exclusively from Article VII, Section 4, of the Montana Constitution" and conforming statutes. Larson, ¶ 17; Stanley, ¶ 52. District courts thus have subject matter jurisdiction over "all civil matters and cases at law and in equity." Mont. Const. art. VII, § 4(1). Accord § 3-5-302(1)(b)-(c), MCA (district court jurisdiction over "all civil and probate matters" and "all cases at law and in equity")"*. Gottlob v. DesRosier, 2020 MT 210, ¶ 8, 401 Mont. 50, 55, 470 P.3d 188, 192.

Defendant Bradshaw failed to state any factual allegation of specific law to substantiate his threat to "remove" Commissioner Snyder as an elected official and therefore ignores the dicta of the Montana Supreme Court, *to wit:*

"*Assuming arguendo that a violation of this ordinance would constitute a ground for recall, the petition fails to specifically set forth what order of business was followed by the mayor and how that was in violation of the ordinance. \*149 The allegation is conclusory and indefinite. We recently held that the allegations in a recall petition must be definite and specific so that the public officer charged is adequately apprised of the exact alleged wrongdoing so that he may answer the charges before the people. Steadman v. Halland (Mont.1982), 641 P.2d 448, 39 St.Rep. 343.Further, by our reading of City Ordinance 1–5–3, the city council is equally responsible for conducting the business of the meetings in the prescribed order.*" Foster v. Kovich, 207 Mont. 139, 139–51, 673 P.2d 1239, 1239–46 (1983).

*Plaintiff's Exhibit # 14, Memorandum RE:  Elected Commissioner For*

*Decennial Government Review.*

Defendant Bradshaw is bound by the oaths taken as an attorney

and an elected official, *to wit: the sharing should*

*""¶ 45 Judicial officers (as well as members of the legislative and executive branches) take an oath to "support, protect and defend the constitution of the United States...." Mont. Const. art. III, § 3. **The Constitution of the United States provides, among other things, that "the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2** (emphasis added). This Court is thus bound by duly enacted federal law. Providing interpretations of Montana laws \*239 that are clearly contrary to federal laws in the conduct they purport to authorize is in tension with our oath and duty to adhere to the federal laws. Providing such interpretations is also in tension with the constitutional limitation on judicial power precluding us from rendering advisory opinions. For these reasons, I conclude that Montana's courts should not—indeed cannot—be required to issue opinions concerning state medical marijuana laws that are trumped by federal law and are mooted by reason of the Supremacy Clause. Again, I would recognize an exception where the State has in fact commenced a civil or criminal proceeding in which one of Montana's medical marijuana laws may provide a defense, and the defendant seeks dismissal or mounts a defense based on that law. The present case is not such a proceeding, however."" Montana Cannabis Indus. Ass'n v. State, 2012 MT 201, ¶ 45, 366 Mont. 224, 238–39, 286 P.3d 1161, 1171*

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

"¶ 51 Indeed, it is a cardinal principle of constitutional law that Montana's Constitution "is the supreme law of this State" and its mandate "must be followed by each of the three branches of government." *241 Associated Press v. Bd. of Pub. Educ., 246 Mont. 386, 391, 804 P.2d 376, 379 (1991). A well-established corollary of this rule is that where a statute or administrative regulation implicates a fundamental right, we apply strict scrutiny—which means the constitutional right may not be impaired absent the showing of a compelling state interest, and the statute or regulation must be closely tailored to effectuate only that compelling state interest by the least onerous path available. Wadsworth, 275 Mont. at 302, 911 P.2d at 1174; Armstrong v. State, 1999 MT 261, ¶ 34, 296 Mont. 361, 989 P.2d 364; Mont. Envtl. Info. Ctr. v. Dept. of Envtl. Quality, 1999 MT 248, ¶¶ 59–63, 296 Mont. 207, 988 P.2d 1236; Snetsinger, ¶ 17. With today's Opinion, the Court turns each of these firmly established principles on its head." Montana Cannabis Indus. Ass'n v. State, 2012 MT 201, ¶ 51, 366 Mont. 224, 238–39, 286 P.3d 1161, 1171.

b)    April 28 and 29, 2025. Defendants Leeper and Wight submitted resignations to the Granite County Commissioners, alluding to Commissioner Snyder as the reason for their actions. Plaintiff's Exhibits # 15, Wight, and #16, Leeper resignations.

c)    May 4, 2025. Commissioner Snyder submitted a Memorandum RE: Resignation of Commissioners Gail Leeper and Robin Wight to place the Study Commission back on track and to demonstrate his willingness to work with the GCCs. Plaintiff's Exhibit # 17, Memorandum RE: Resignation of  Commissioners Gail Leeper and Robin Wight.

d)      May 13, 2025. Granite County Commissioners. Decision to place a newspaper advertisement to attempt to find replacements to be appointed in place of the two elected Study Commissioners. N.B.: Ms. Elena Gagliano, the fourth candidate in the November 2024 election for Study Commissioners, was in attendance and expressed a desire to serve on the Study Commission. If she had been appointed, a quorum would have been immediately present, and the Commission could have moved forthwith and continued with its Constitutional Mandate. The county commissioners failed to present any authority for their decision to suspend the Study Commission's Mandate. *Plaintiff's Exhibit # 18 a, Granite County Commissioners' May 13, 2025 Agenda and 18 b Meeting Minutes pages 1 & 3.*

e)      May 20, 2025, Ms. Elena Gagliano present. Continue placing Study Commission on hold for lack of quorum without any authority to do so. Bradshaw confused over the requirements for Stu she the dy Commission appointments. *Plaintiff's Exhibit # 19, Granite County Commissioners' May 20, 2025 Agenda.*

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

f)      May 27, 2025, No minutes posted. *Plaintiff's Exhibit # 20,, Granite County Commissioners' May 20, 2025 Agenda.*

g)      June 3, 2025. Ms. Gagliano is present. *Plaintiff's Exhibit # 21, Granite County Commissioners' June 3, 2025 Agenda.*

h)      June 10, 2025.No Agenda or Minutes Posted. On the

i)      June 17, 2025. June 17, 2025, Ms. Gagliano was present.

j)      June 24, 2025. Ms. Gagliano is present. Luke Ulatowski appointed as Chairman of the Study Commission, had not taken the required Constitutional Oath. The GCCs have NO Statutory or Constitutional authority to appoint a Chairman of the Study Commission. Ulatowski attempted to advise the GCCs from materials obtained from MSU, but was contradicted by Bradshaw. Ulatowski's "appointment" restores a quorum; however, he refused to meet until a third member was present.

Bradshaw recommended removing Commissioner Snyder for self-appointing as chairman and for continued legal threats without legal grounds. Ulatowski wanted more information for the removal of the Commissioner, but agreed that Commissioner Snyder's actions were "inappropriate".

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

These actions and comments completely ignore MCA 47-7-401 and, therefore, are spuriously arbitrary and capricious. The First Amendment "guarantees" freedom of speech and expression, no matter who disagrees. Montana treats an ELECTED officer, *to wit*:

*"In Bynum v. Strain, 95 Okla. 45, 218 P. 883, it is said: 'In the absence of authoritative law, the judiciary is without jurisdiction to direct the Governor in the management of executive \*482 affairs and powerless to enforce its mandates, should it assume to do so. \* \* \* The elective officer is responsible directly to the electorate; he is elected by the voters, and the public has a right in his tenure of office, a right which can be properly determined by the courts only, and the courts have universally and very properly so held. But a different principle is involved in the case of an appointee to an appointive position in a subordinate branch of the special sphere of duties and responsibilities of the Chief Executive. An appointee to such a position is selected by the Chief Executive for the purpose of aiding the executive in carrying out his sense of duties and responsibilities to the public, and with the belief that such appointee will work in harmony with and aid the Governor in fulfilling his sense of duty to the public. It is the Governor, the Chief Executive, who is held responsible to the sovereignty for errors in his executive and administrative policies. The appointee is responsible to the Chief Executive, and, in the absence of express authority, the judiciary has nothing to do with the Chief Executive's judgment, conscience, sense of duty, or responsibilities.' 218 P. at pages 888, 889."*

*State ex rel. Bonner v. Dist. Ct. of First Jud. Dist. in & for Lewis & Clark Cnty.*, 122 Mont. 464, 481–82, 206 P.2d 166, 175 (1949). See also *Plaintiff's Exhibit # 3, 'Montana's Local Government Voter Review, 2024 – 2026 6th cycle', Study Commission Orientation December 2024, pages 1-37, and footnote at the bottom of page 38, supra; Montana*

*Constitution* "ARTICLE XI, LOCAL GOVERNMENT, Section 9, VOTER REVIEW OF LOCAL GOVERNMENT, Subsection (1)", *supra*, and *Plaintiff's Ex # 8, MCA 7-3-101-193 provides complete information on the Local Government Study Commission functions and powers.* Bradshaw's ideas of how the Commissioners should function are completely erroneous and in stark opposition to the dicta of the herein identified Montana Constitution, MCA's, and MSU Study Guide materials.

There appears to be no question that Bradshaw's appearance was calculated to discredit Commissioner Snyder and form a basis, notwithstanding that the basis was a lie and arbitrary, unbecoming of a licensed attorney, to remove Commissioner Snyder arbitrarily. Commissioner Snyder was framed by the conspiracy of Bradshaw, Leeper, and Wight. The First Amendment "guarantees" freedom of the speech and expression, no matter who disagrees. *Plaintiff's Exhibit # 26a, Granite County Commissioners' June 24, 2025 Agenda and 26b, meeting minutes, pages 1, 3 and 4, See also Plaintiff's Exhibit # 27, an okay he's Email from Maranda Williams, GCCs Secretary, June 17, 2025, titled Granite County Study Commission Applications Regarding*

*Two Vacant Seats, and Plaintiff's Exhibit # 28, Letter of appointment for*

*Ulatowski, June 11, 2025.*

j)      July 1, 2025. Ms. Gagliano was present.

Minutes Page 3 – "ISSUE OF POSSIBLE REMOVAL OF LOCAL

GOVERNMENT STUDY COMMISSION MEMBER, DR. GARY

SNYDER, *to wit:*

*"Evidence was presented that Dr. Snyder has been repeatedly disruptive during meetings, threatened legal action twice, and overstepped his authority by self-declaring himself acting chair without a public meeting and trying to post meeting notices as chair. His disruptive behavior substantially led to the resignation of two members due to stress. Commissioners Kulaski (whom Dr. Snyder never met) and McLure both agreed that Dr. Snyder's actions have made the Study Commission dysfunctional, with Commissioner McLure describing the Study Commission meetings as "horrible" and confirming that Dr. Snyder's presence would hinder the commission's success. Later it was discovered out (sic) that Dr. Gary Snyder may not have received direct notice of said meeting, and so the matter will be placed on the Commission's July 8th Agenda, Dr. Snyder will be given direct notice of the said meeting, and so the entire matter will be re-heard by the County Commission with decision."*

Commissioner Snyder hereby incorporates, as a response and

defense, page 25, line 14 – page 26, line 16.

Bradshaw informed the commission that two additional Study

Commission applications had been submitted, namely, Ms. Jackie

Butler and Ms. Gagliano, but recommended against both. **The reason**

**given was past issues!** Both were qualified, being registered voters

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

and living in Granite County. Bradshaw was not acting in a prosecutorial capacity and should be held legally responsible for violating his sworn constitutional oath, in addition to acting beyond his scope.

The Montana Constitution, Article II—Declaration Of Rights, Sections 1. Popular Sovereignty, 3. Inalienable Rights, 4. Individual Dignity, 7. Freedom of Speech, Expression, and Press, 8. Right of Participation, 17. Due Process of Law, and 22. Excessive Sanctions should be applied to immediately remove the previously arbitrarily appointed necessary individuals and appoint Ms. Butler while retaining Ms. Gagliano. At a minimum, Bradshaw should be reported to the Montana Bar for an ethics violation. Kulaski and McLure will be dealt with infra. *Plaintiff 's Exhibit # 29a, Granite County Commissioners' Agenda, and 29b, meeting minutes, pages 1, 3, and 4.*

## V.    COUNT TWO – EQUAL PROTECTION VIOLATIONS

The Plaintiff realleges and incorporates the preceding paragraphs.

*"ARTICLE II Section 4. Individual Dignity – Montana Constitution*

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

*The dignity of the human being is inviolable no person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or **political** (**emphasis added**) or religious ideas."*

*"Montana Code Annotated 2023; TITLE 49. HUMAN RIGHTS; CHAPTER 1. BASIC RIGHTS; Part 2. Basic Political Rights; Right To Hold Elected Office*
*49-1-202.    Right to hold elected office. Every elector is eligible to the office for which the elector is an elector except where otherwise specially provided. History:   En. Sec. 84, Pol. C. 1895; re-en. Sec. 37, Rev. C. 1907; re-en. Sec. 38, R.C.M. 1921; Cal. Pol. C. Sec. 58; re-en. Sec. 38, R.C.M. 1935; R.C.M. 1947, 83-405; amd. Sec. 1797, Ch. 56, L. 2009."*

"AMENDMENT XIV. CITIZENSHIP; PRIVILEGES AND IMMUNITIES; DUE PROCESS; EQUAL PROTECTION; APPOINTMENT OF REPRESENTATION; DISQUALIFICATION OF OFFICERS; PUBLIC DEBT; ENFORCEMENT

Currentness
**Section 1**  All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

United States Code Annotated; Constitution of the United States SuperBrowse Annotated; SuperBrowse Amendment XIV. Citizenship; Privileges and Immunities; Due Process; Equal Protection; Apportionment of Representation; Disqualification of Officers; Public Debt; Enforcement
U.S.C.A. Const. Amend. XIV"

Commissioner Snyder remains the only legitimately elected LGSC despite the simple fact that Defendant Bradshaw recommended, and Defendants GCCs Adler, Kaluski, and McLure motioned and voted to remove him from the Local Government Study Group. This was in spite of the Montana Constitutional Mandate regarding Elected Commissioners and the plethora of statutes and policies cited herein. This action is arbitrary and capricious pursuant to the above-noted Title 13, *et seq,* and must be enjoined immediately to comply with the Montana Constitution. Commissioner Snyder must be accorded Equal Protection pursuant to the Montana Constitution, and the illegitimately appointed LGSCs must be immediately enjoined from any further activity regarding the LGSC.

The actions of Defendants GCCs have been nothing but spuriously irrational, arbitrary, and capricious, and lack any substantial state reason. *Village of Willowbrook v. Olech,* 120 S.Ct. 1073, 528 U.S. 562, 565 (2000).

## VI.    COUNT THREE

## FAILURE TO ACCORD SUBSTANTIVE DUE PROCESS

The Plaintiff realleges and incorporates the preceding paragraphs.

Substantive due process is an elusive and somewhat controversial concept in American law. A simple definition of substantive due process is

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

that portion of law whereby government deprivation of life, liberty, or property must include a sufficient substantive justification for said deprivation. Strict analysis must be used for government intrusion of fundamental rights. *Plaintiff's Exhibit # 5, Erwin Chemerinsky, Sidney M. Irmus Professor of Law and Political Science, University of Southern California Law School, SUBSTANTIVE DUE PROCESS, TOURO LAW REVIEW, Volume 15, 1999, 1501 – 1534, p. 1501*

## A.  Related Case and Statutory Law

The concept of substantive due process gained credibility in 1937 during the Lochner era, which primarily emphasized economics. See *Lochner v. New York*, 198 U. S. 45 (1905). Since that time, the concept has undergone numerous iterations by various Supreme Courts. Much of the controversy has focused on whether or not there have been pre- or post-deprivation state remedies. A prevailing thread in numerous cases involving personal deprivations, particularly those concerning fundamental rights such as freedom of speech and expression, is that they fall within the ambit of substantive due process. These types of cases are actionable under section 1983 regardless of state remedies and without first being brought to state courts. *Monroe v. Pape*, 81 S.Ct. 473, 482 (1961).

A more recent case, *Carey v. Piphus*, 435 U. S. 247, 263-65 (1978) is more on point (substantive due process) with the facts of this lawsuit wherein the action taken by Defendant Bradshaw and Defendants GCCs, Adler, Kulasi, and McLure wherein the Montana Constitution and the MCA is silent, not only on the ability to impeach or remove an elected official but also the Montana Constitution has not had the directed legislation incorporated into MCA 7-3 *et. seq.* or elsewhere regarding the situation confronted by the facts of the present case. The local governments, therefore, lack legislative guidance for pre- or post-deprivation remedies. The only guidance pertains to the replacement of vacant positions within an elected study group, *to wit*:

"*MCA 7-3-176*

*7-3-176. Election of commission members--appointments*

*Currentness*
*(1) An election to fill the positions on the local government study commission must be held in accordance with 7-3-174. A primary election may not be held.*
*(2) The names of study commission candidates who have filed declarations of nomination not later than the filing deadline established in 13-1-403 must be placed on the ballot. There is no filing fee. The election is nonpartisan, and candidates must be listed without party or other designation or slogan. The secretary of state shall prescribe the ballot form for study commissioners.*
*(3) Candidates for study commission positions must be electors of the local government for which the study commission has been established.*

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

*The candidates **may not be elected officials of the local government** (**emphasis added**).*

*(4) The number of candidates, equal to the number of study commission positions to be elected, receiving the highest number of votes, which includes votes cast for candidates who have officially filed nominations and votes for write-in candidates, **must be** declared elected (**emphasis added**). If there is a tie vote among candidates, the governing body shall decide by lot which candidate will fill the position.*

*(5) If the number of candidates filing for election is equal to or less than the number of positions to be filled, the election administrator and governing body shall proceed in accordance with 13-1-403 (4) and (5). If the number of study commissioners elected is not equal to the number required to be selected, the presiding officer of the governing body, with the confirmation of the governing body, shall appoint the additional study commissioners within 20 days after the election. **An elected official of the local government may not be appointed (emphasis added).**"*

And

*"MCA 13-1-403*

*13-1-403. Election deadlines for candidate filing, write-in candidacy, and withdrawal--election cancellation--election by acclamation*

*Currentness*
*(1) Consistent with the candidate filing deadline in 13-10-201(7) for primary elections and except as provided in subsection (2) for a write-in candidate, the candidate filing deadline for election to a local government office is no sooner than 105 days and no later than 90 days before the election.*
*(2)(a) A declaration of intent to be a write-in candidate must be filed with the election administrator by 5 p.m. on the 90th day before the date of the election.*
*(b) An unsuccessful candidate for office at a primary election may not seek nomination by write-in vote or petition for the same office at the general election.*
*(3) Consistent with the withdrawal deadline in 13-10-325 for primary elections, a candidate may not withdraw after the candidate filing deadline provided in subsection (1).*

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

*(4) Except as provided in subsection (5)(b) and unless otherwise specifically provided by law, if the number of candidates filing for election is equal to or less than the number of positions to be filled, the election administrator shall notify the governing body of the local government in writing that the election is not necessary and the governing body may by resolution cancel the election.*

*(5)(a) If an election has been canceled and there is only one candidate for a position, the governing body of the local government shall declare the candidate elected to the position by acclamation.*

*(b) If an election has been canceled and there are no regular or declared write-in candidates for a position, the governing body of the local government shall fill the position by appointment. The term of an appointed member must be the same as if the member were elected."*

The candidates are prohibited from being elected officials of local government. Elected officials of local government may not be appointed.

Despite the Montana Constitution's direction regarding the general operating form of local governments, the Montana Legislature has failed to provide a comprehensive process for addressing vacancies and replacements within local government study groups, specifically noted. This failure on the part of the legislature does not ***grant carte blanche authority to a local government administrative unit*** to completely abolish the remaining elected officials and replace them with individuals who will bend to their will, thereby preserving **their functions as the status quo**.

## A. Legal Standard To Establish Violation Of

## Substantive Due Process

*""The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const., amend. 14, § 1. As the Supreme Court has explained, the Due Process Clause "guarantees more than fair process." Washington v. Glucksberg, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). The Clause "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement \*767 them." County of Sacramento v. Lewis, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quotation omitted). In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective. Id. at 845–46, 118 S.Ct. 1708."" Seegmiller v. LaVerkin City*, 528 F.3d 762, 766–67 (10th Cir. 2008).

The Supreme Court has set forth two elements of Substantive Due Process, which are non-exclusive, and one must be shown to state a claim under Substantive Due Process. The first element has been described as an action that "shocks the conscience," and the second element is a violation of a fundamental right or liberty interest that is "deeply rooted in this nation's history and tradition" and "implicit in the concept of ordered liberty." *Chavez v. Martinez*, 538 U. S. 760, 775, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003). Ablation of these rights, as has occurred by the actions of Defendants Bradshaw, Alder, Kulaski, and McLure, and created a situation where "neither liberty nor justice would exist." *Palko v. Connecticut*, U.S. 319, 325, 58 S.Ct. 82 L.Ed. 288 (1937).

The second element has been stated, *to wit*:

*"Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. Flores, supra, at 302, 113 S.Ct., at 1447; Collins, supra, at 125, 112 S.Ct., at 1068; Cruzan, supra, at 277–278, 110 S.Ct., at 2850–2851. Our Nation's history, legal traditions, and practices thus provide the crucial "guideposts for responsible decisionmaking," Collins, supra, at 125, 112 S.Ct., at 1068, that direct and restrain our exposition of the Due Process Clause. As we stated recently in Flores, the Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." 507 U.S., at 302, 113 S.Ct., at 1447." Washington v. Glucksberg,* 521 U.S. 702, 721, 117 S. Ct. 2258, 2268, 138 L. Ed. 2d 772 (1997).

The fundamental liberty interest must include a careful description of the asserted fundamental liberty interest, *Glucksberg, Id.*, and secondarily, the fundamental liberty interest must be "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* Also see *Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1239 (11th Cir. 2004).

…"As a general matter, the Supreme Court has held that laws directly restricting the freedom of individuals to express particular messages because those messages might have harmful or undesirable effects are presumptively – perhaps conclusively – unconstitutional. Indeed, the court has not upheld a direct restriction on speech because it might persuade readers or listeners to engage in criminal activity since *Dennis v. United States* (1951); it is not

upheld a direct restriction on speech because the ideas expressed might provoke a HOSTILE AUDIENCE response sense *Finer v. New York* (1951) and it has never upheld a direct restriction on the publication of truthful information because of its disclosure would interfere with public or private interests in keeping the information confidential." Id.., Encyclopedia of the AMERICAN CONSTITUTION, *FIRST AMENDMENT (update 2), page 1055, Author Geoffrey R. Stone (2000)."*

### B.     Elements Required to Establish a Constitutional Right

The Plaintiff must allege deprivation of an actual Constitutional Right. *See Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, L.Ed.2d 396 (1982). The Defendants' conduct towards the Plaintiffs' actual right must be shown to be unreasonable and to clearly violate established law. *(See) Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2.d 396 (1982). The Right must be clearly established at the time of the violation. *(See) Wilson v. Layne*, 526 603, 609 (quoting *Conn*, 526 U.S. @ 290. The Defendants' action must be the cause of the violation. *(See) Hart v. O'brien*, 127 F.3d 424, 446 (5th Cir. 1995). The GCC's Adler, Kulaski, and McLure were notified, presumably by dated resignations, *Plaintiffs' Exhibits # 15 and # 16* of the Local Government Study Commissioners,

respectively, Robin Wight and Gail Leeper, on April 28, and April 29, 2025, respectively

Indeed, if Granite County were to become self-governing, regardless of the other individual iterations, and develop its own charter —a form of local government pursuant to the Constitution in agreement with the State Constitution —the current elected commissioners and other elected individuals, such as the treasurer, and elected officials such as Defendant Bradshaw, may well no longer be elected but would become employees of sorts.

Defendant Bradshaw and Defendants GCCs, Adler, Kulasi, and McLure were specifically warned that any attempt to impeach/remove an elected official from the local government study group without judicial involvement pursuant to MCA 47 – 7 – 401 as prescribed for the process of such impeachment/removal, for the purpose of silencing the elected official displays a wanton and willing intention of ignoring substantive due process. *Plaintiffs Exhibit # 11 Granite County Commissioners Notice of Removal of Commissioner Snyder.*

This action by the Defendants was arbitrary, capricious, and tyrannical, and "shocks the conscience in a constitutional sense," as it falsely claimed, Plaintiffs' Exhibits # 11, ¶ 2, line 3, Commissioner Snyder

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

had been "appointed." The records undeniably attest that Commissioner Snyder was a duly **elected and mandated Commissioner, pursuant to ARTICLE XI, Section 9**, and was willing to study and educate the electorate on the advantages of self-government versus a general powers government. See *Plaintiff's Exhibit 4, pages 3, 4, and 5*. See also *Sacramento v. Lewis*, 118 S. Ct. at 1717 (quoting *Collins v. Harker Heights*, 503 U. S. 115, 128 (1992)).

The Notice of Removal is conclusive evidence of the County Commissioners' complete failure to understand the difference between a democratically elected position and an appointment, driven by their penchant for retaliation based on differences of opinion and fear of losing their political positions.

## VII.   COUNT FOUR

## MONTANA CONSTITUTIONAL FAILURE TO AFFORD

## PROCEDURAL DUE PROCESS

The Plaintiff realleges and incorporates the preceding paragraphs.

**ARTICLE II, DECLARATION OF RIGHTS**

"**Section 1.      Popular sovereignty.** **(emphasis added)** All political power is vested in and derived from the people. All government of right

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

originates with the people, is founded upon their will only, and is instituted solely for the good of the whole." *There is **NO provision** in the Montana Constitution for county commissioners to overturn the electorate's vote for a duly elected commissioner!"*

"**Section 2. Self-government.**    The people have the exclusive right to govern themselves as a free, sovereign, and independent state. They may alter or abolish the constitution and form of government whenever they deem it necessary.

Pursuant to **ARTICLE XI – LOCAL GOVERNMENT, Section 1. Definition.** "The term local government units includes but is not limited to counties, incorporated cities, and towns. Other local government units may be established by law."

"**Section 9.     Voter review of local government.** Subsection (2)    The legislature **shall require** (emphasis added) an election in each local government to determine whether a local government will undertake a review procedure once every 10 years after the first election. Approval by a majority of those voting in the decennial general election on the question of undertaking a local government review is **necessary to mandate** (emphasis added) the election of a local government study commission. Study commission members

shall be elected during any regular scheduled election in local governments **mandating** (emphasis added) their election.

An election for local government study commissioners was held in November 2024 pursuant to ARTICLE XI, subsection (2). Four candidates were voted on during that election, and the top three, including Commissioner Snyder, received the most votes and therefore were declared elected Local Government Study Commissioners pursuant to:

"MCA 7-3-176

7-3-176. Election of commission members—appointments, Subsection 3

(3) Candidates for study commission positions must be electors of the local government for which the study commission has been established. The candidates may not be elected officials of the local government.
(4) The number of candidates, equal to the number of study commission positions to be elected, receiving the highest number of votes, which includes votes cast for candidates who have officially filed nominations and votes for write-in candidates, must be declared elected. If there is a tie vote among candidates, the governing body shall decide by lot which candidate will fill the position."

The elected Local Government Study Commissioners were certified to the Secretary of State of Montana.

On April 20, 2025, Defendants Leeper and Wight conspired with Defendant Bradshaw to coerce Commissioner Snyder into acquiescing to their views regarding the study commission's role. Commissioner Snyder stated that I would continue to follow the MSU guidelines and the Montana

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

Constitution. At that time defendant Bradshaw stated that Commissioner Snyder could be removed from the study group. It was his opinion that the study group was to function independently of the county, allowing the electorate to learn about the various forms of government available to them. The above actions of Bradshaw and the CCC's Adler, Kulaski, McLure, and Commissioners Leeper and Wight acted out of fear that Self Governing could potentially eliminate their current political positions.

On May 21, 2025, Defendant Wight expressed disappointment with the tenor of the study group meetings and asked the county commissioners to appoint someone to take over her duties as Secretary. Shortly thereafter Commissioner Snyder was informed by Defendant Lutowski, the local Newspaper editor for Philipsburg, that Defendants Leeper and Wight had resigned from the study group and asked for Commissioner Snyder's opinion.

Shortly after the June 24, 2025, meeting of the GCCs, Alder, Kulaski, and McLure, Commissioner Snyder was notified by an attendee that he was being considered for removal from the LGSC. Commissioner Snyder obtained the recorded meeting on Zoom and learned that Defendant Bradshaw was insinuating that he was "in part responsible for the resignations of Defendants Leeper and Wight. Bradshaw also indicated at that time that the county could

flaunt democracy in Montana and remove an elected Commissioner at their pleasure.

Commissioner Snyder received an email around July 6, 2025, followed by a correspondence received July 8, 2025, advising of an opportunity to be heard regarding possible removal from the study commission. *Plaintiff's Exhibit # 30.* A response was mailed on July 6, 2025, and a copy was sent by email on the same date. *Plaintiff's Exhibit # 31.*

This action illustrates the egregiousness and trashing of the Rules of Civil Procedure. Upon realizing the non-receipt, the commissioners voted to remove Commissioner Snyder, as their minds and plans had already been made up. These people MUST receive a harsh punishment as they obviously operate in their own little cabal.

## IX. TORTS RELATED TO THE U.S. AND MONTANA CONSTITUTIONS

**Libel per se AND Slander per se:**

The Plaintiff realleges and incorporates the entirety of the preceding paragraphs.

"Libel is defined in the Montana law is a false privileged publication by writing pretty picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloguy always or which causes him to be shunned or avoided or which has a tendency to injure him and his occupation." Williams v. Pasma, 202 Mont. 66, 656 P. 2d 212, 214 – 19 (1982).

:Slander is defined as:..a false and underprivileged publication other than libel which:

"(1) charges any person with crime or with having been indicted, convicted, or punished for crime;

"(2) imputes in him the present existence of an infectious contagious or loathsome disease;

"(3) tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general qualification in those respects which the office or other occupation particularly requires or by imputing

something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit;...

"(5" by natural consequence causes actual damage."" Section 27 – one – 803, MC A."

Defendants Bradshaw and the GCCs, Adler, Kulaski, and McLure, were adequately forewarned that they lacked legal authority to remove Commissioner Snyder, who was a duly elected commissioner. Perusal of the entire proceedings as set forth in Plaintiff's Exhibits # 4 through # 23 is proof positive of the intent to remove Commissioner Snyder as a result of his political views and further to injure him politically in the small rural Granite County. Those actions are a clear indication of malice, whether they would now state they had incomplete knowledge at the time or with "reckless disregard of whether it was false or not". See *New York Times v, Sullivan*, 376 U. S. 254, 279 – 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964).

"678 The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498. 'The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system.' Stromberg v. California, 283 U.S. 359, 369, 51 S.Ct. 532, 536, 75 L.Ed. 1117. '(I)t is a prized American

privilege to speak one's mind, although not always with perfect good taste, on all public institutions,' Bridges v. California, 314 U.S. 252, 270, 62 S.Ct. 190, 197, 86 L.Ed. 192, and this opportunity is to be afforded for 'vigorous advocacy' no less than 'abstract discussion.' N.A.A.C.P. v. Button, 371 U.S. 415, 429, 83 S.Ct. 328, 9 L.Ed.2d 405. *270 The First Amendment, said Judge Learned Hand, 'presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly; but we have staked upon it our all.' United States v. Associated Press, 52 F.Supp. 362, 372 (D.C.S.D.N.Y.1943). Mr. Justice Brandeis, in his concurring opinion in Whitney v. California, 274 U.S. 357, 375—376, 47 S.Ct. 641, 648, 71 L.Ed. 1095, gave the principle its classic formulation:

'Those who won our independence believed * * * that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; that it is hazardous to discourage thought, **721 hope and imagination; that fear breeds repression; that repression breeds hate; that hate menaces stable government; that the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil counsels is good ones. Believing in the power of reason as applied through public discussion, they eschewed silence coerced by law—the argument of force in its worst form. Recognizing the occasional tyrannies of governing majorities, they amended the Constitution so that free speech and assembly should be guaranteed.'" *Sullivan*, supra.

Montana statutes attempt to simplify words that are defamatory per se

as indicators of libel per se, to wit:

""'Words are defamatory per se which upon their face and without the aid of extrinsic proof are injurious to the person concerning whom they are spoken.' Manley v. Harer, 73 M (253) 258 (235 P. 757). They must be susceptible of but one meaning (Brown v. Independent Publishing Co., 48 M (374) 380 (138 P. 258)), and that an opprobrious one. (Burr v. Winnett Times, 80 M (70) 75 (258 P. 242)). If the words are not defamatory per se they cannot be made so by innuendo. . . . To determine whether the words constitute libel per se they must be construed in relation to the entire publication, which must in turn be

viewed as a stranger might look at it, without the knowledge possessed by the parties concerned (Brown, supra, pg. 380). Their injurious character must be a fact of such common notoriety as to be established by the general consent of men so that the court takes judicial notice (Griffin v. Opinion Publishing Co., 114 M (502) 508 (138 P.2d 580)). In a word, the insult must be obvious.”” *Williams*, supra at p 122.

““Generally, if the words are defamatory per se, damage is presumed and general damages may be recovered without allegation or proof of special damages (Paxton v. Woodward, 31 M (195) 209 (78 P. 215)). See discussion of exception that must be made in the case of alleged libel of public official, below. If the words are not defamatory per se facts must be pleaded which show the words are libelous and special damages must be specially pleaded, according to all the Montana cases from Ledlie v. Wallen (1895) 17 M (150) 155 (42 P. 289) to Steffes v. Crawford (1963) 143 M (43) 47 (386 P.2d 842).”” *Williams*, id. at p. 122.

The actions in this case were all made public. The *Plaintiffs' Exhibits* include minutes from the public meetings; however, those minutes do not reflect the entirety of the videotaping for the meetings. Those tapings have been withdrawn from the Granite County Website and will be subpoenaed with the court's assistance. By arguing that the exact excerpts of the video presentation will further add to the claims presented here.

## X.    REQUEST FOUR INJUNCTION

MCA 7-3-178 places a time limit on appointing replacements for theindividuals who resigned of thirty (30) days. Subsection (2) states “… A vacancy on a study commission **must** (emphasis added) be filled by

appointment by the governing body of the local government being studied by the commission. The appointment must be made within 30 days of the date the vacancy occurs." The reasoning behind this is that the time limits are rigidly fixed for which events must take place by the study group.

In this case there was no excuse for the Granite County Commissioners to drag their feet from April 29, 2025 until July, 2025. Ms. Elena Gagliano was present and willing to serve shortly after the resignations occurred. She could have been appointed by May 6, 2025, which would have established a quorum, and the committee could have continued its work until a third person was appointed. There is simply no excuse, and no statute gives the county commissioners authority to pause the commission's work. See *Plaintiff's Exhibit # 26, page 4.*

One of the reasons the two people resigned was the fact that Commissioner Snyder drew attention to the fact that the women had very close, long-standing associations with the county commissioners, and even maintained an office in the same building. Commissioner Snyder has not been able to find any statute that would allow Study Commissioners to engage in such close relationships with the county commissioners. The local government study commission was designed to be independent in their evaluation of the current power and form of government and compare it to self-governing power

and a choice of numerous forms of operation. Defendant Bradshaw quickly stated at the April 20 meeting that he had attended that the two individuals were legally allowed to serve as commissioners. He was, however, unable or unwilling to produce facts that would give credence to his opinion. In retrospect, the commission's operation under the tutelage of the two commissioners who had resigned was being slow-walked and was definitely being oriented away from the idea of self-governing power. If the electorate were to adopt self-governing, the present County commissioners would likely lose their authority, which they appear to cling to until the bitter end.

An immediate fourthwith temporary injunction, is indicated based on the facts *supra*, and the arbitrary and capricious actions of the county commissioners. It only makes common sense. In order for the committee to resume its Constitutional mandate the following actions would be extremely helpful, *to wit*:

a) The budget of $12,000 is barely adequate and therefore it must at least be restored to the time the cabal action took place, for the present year;

b) The meeting facilities must be under the direct control of the Study Commission , preferably in a location apart from the county commissioners;

c) A website must be developed and totally under the control of the Study Commission;

d) Ms. Gagliano and Ms. Butcher must be willing to meaningfully educate the electorate to the pros and cons of a change to self-governing power;

d) Defendant Bradshaw and the GCCs must be prohibited by further court order to refrain from any further interference with the committee's constitutionally mandated operation; and

e) Due to the wasted time, the judicious use of signage and billboards would be very educational, and the county commissioners must be held accountable for the cost.

With a meaningful temporary injunctive order, the Local Government Study Commission will need to fulfill its purpose and function within a very short period. The situation is entirely the making of the tyrannical, arbitrary actions of the Granite County Commissioners.

Respectfully Submitted,

Duly Elected Commissioner Snyder

DATED:  This 28th day of December, 2025

BY Gary L. Snyder, M.D.(ret.), RVT
Plaintiff
Advanced Certificated Paralegal
62 N. Sunbear Dr; P.O. Box 1053
Philipsburg, Montana 59858
Phone  (763) 331-2266
eMail:

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

| Exhibit Table | | |
|---|---|---|
| **Ex. #** | **Description** | **Page** |
| 1 | *Plaintiff's Exhibit # 1 - Tape Recording, alleged to be certified by Leeper of all meetings of the original elected Commissioners.* | 4 |
| 2 | *Notice of Impending Suit RE: Constitutional Violations.* | 7 & 8 |
| 3 | *Montana's Local Government Voter Review, 2024 – 2026 6th cycle', Study Commission Orientation December 2024, pages 1-6, 9-16, 18-32, 35-37, and footnote at the bottom of page 38.* | 5 |
| 4 | *(Plaintiff's Ex. # 3), pages 5-12* | 7 |
| 5 | *Memorandum RE: Elected Commissioner for Decennial Government Review* | 8 |
| 6 a, b, & c, d, e, & f | *Plaintiff's Exhibit # 6a, Complaint – Writ for Mandamus, 6b, Summons, 6c Form 18 acceptance without personal service, and Exhibits 1 – 14, 6d, and 6e, and Motion and Order for Dismissal,6f, resulting in the complaint being MOOT after the removal of Commissioner Snyder* | 9 |
| 7 | *(Plaintiff's Exhibit # 4), p 3 & 4* | 10 |
| 8 | *MCA Title 7- 101-192 and related statutes* | 10 |
| 9 | *(Plaintiff's Exhibit 4), page 3, paragraphs two and three and the entirety of page 4* | 11 |
| 10 | *(Plaintiff's Ex. #4) MSU Local Government Review Study Commission Guide pages 9-10, Scope of Montana's Local Government Review.* | 13 |
| 11 | *Removal Notification of Commissioner Snyder from the Local Government Study Commission ¶1.* | 14 |
| 12 | *(Pl. Ex. #11, Removal Notification of Commissioner Snyder from the Local Government Study Commission ¶ 2)* | 19 |
| 13 | *(Pl. Ex. # 1, Recorded LGSC meeting April 17. 2025)* | 19 |
| 14 | *Memorandum RE: Elected Commissioner For Decennial Government Review* | 21 |
| 15 | Wight's resignation from the LGSC | 23 |

| 16 | Leeper's resignation from the LGSC | 23 |
|---|---|---|
| 17 | Memorandum RE: Resignation of Commissioners Gail Leeper and Robin Wight | 23 |
| 18 a&b | *Plaintiff's Exhibit # 18 a, Granite County Commissioners' May 13, 2025 Agenda and 18 b Meeting Minutes pages 1 & 3* | 24 |
| 19 | *Plaintiff's Exhibit # 19, Granite County Commissioners' May 20, 2025 Agenda* | 24 |
| 20 | *Plaintiff's Exhibit # 20, Granite County Commissioners' May 27, 2025 Agenda* | 24 |
| 21 | *Plaintiff's Exhibit # 21, Granite County Commissioners' June 3, 2025 Agenda* | 24 |
| 22 | *Plaintiff's Exhibit # 22 a, Granite County Commissioners' June 24, 2025 Agenda, and 22 b Meeting Minutes, pages 1, 3, and 4* | 25 - 27 |
| 23 | *Plaintiff's Exhibit # 23a, Granite County Commissioners' June 24, 2025 Agenda, and 23 b Meeting Minutes, pages 1, 3, and 4* | |
| 24 | *Plaintiff's Exhibit # 3, 'Montana's Local Government Voter Review, 2024 – 2026 6th cycle', Study Commission Orientation December 2024, pages 1-37, and footnote at the bottom of page 38, supra; Montana* | 26 |
| 25 | *Plaintiff's Ex # 8, MCA 7-3-101-193* | 26 |
| 26 | *Plaintiff's Exhibit # 26 a, Granite County Commissioners' June 24, 2025 Agenda and 26 b, meeting minutes, pages 1, 3 and 4* | 27 |
| 27 | *Plaintiff's Exhibit # 27, and Email from Maranda Williams, GCCs Secretary, June 17, 2025, titled Granite County Study Commission Applications Regarding Two Vacant Seats* | 27 |
| 28 | *Plaintiff's Exhibit # 28, Letter of appointment for Ulatowski, June 11, 2025* | 27 |
| 29 | *Plaintiff's Exhibit # 29a, Granite County Commissioners' Agenda, and 29 b, meeting minutes, pages 1, 3, and 4* | 29 |
| 30 | *Plaintiff's Exhibit # 5, Erwin Chemerinsky, Sidney M. Irmus Professor of Law and Political Science, University of Southern* | 32 |

| | | |
|---|---|---|
| | *California Law School, SUBSTANTIVE DUE PROCESS, TOURO LAW REVIEW, Volume 15, 1999, 1501 – 1534, p. 1501* | |
| 31 | *Plaintiffs Exhibit # 11 Granite County Commissioners Notice of Removal of Commissioner Snyder* | 40 |
| 32 | *Plaintiffs Exhibits 2, pages   3, 4, and 5* | 41 |
| 33 | *Notice to appear on the date of the hearing* | 45 |
| 34 | *Response to Notice* | 45 |

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

| Authority, Statute, and Case Table | Page(s) |
|---|---|
| *Foster v. Kovich*, 207 Mont. 139, 139–51, 673 P.2d 1239, 1239–46 (1983) | 9-10 |
| *Marbury v. Madison, 5 U.S. 137 (1803)* | 11 |
| *Whitney v. California*, 274 U.S. 357 (1927) | 12 |
| *In RE Murchinson*, 349 U.S., 133, 136, 75 S. Ct. 623, 625 (1955) | 12 |
| *Nevada Commission on Ethics v. Carrington*, 564 U.S. 560 (1991) | 13 |
| *Wooley v. Manard*, 430 U.S. 705 (1977) | 13 |
| *Encyclopedia of the AMERICAN CONSTITUTION*, volume 3, second edition, edited by LEONARD W. LEAVING, and KENNETH L. CARS, copyright 2000 by Macmillan reference USA, FIRST AMENDMENT, Author ARCHIBALD COX (1986), pages 1045 through 1052 | 14 |
| *Encyclopedia of the AMERICAN CONSTITUTION, FREEDOM OF SPEECH*, page 1132, Author, THOMAS I. EMERSON (1986). | 15 |
| *Encyclopedia of the AMERICAN CONSTITUTION, FREEDOM OF SPEECH*, page 1135, Author FREDERICK SHAUER (2000). | 16 |
| ARTICLE XI, LOCAL GOVERNMENT, Section 9, VOTER REVIEW OF LOCAL GOVERNMENT | 17, 41 |
| Mont. *Cannabis Indus. Ass'n v. State* 366 Mont. 224, 240-41, ¶ 51-52 (2012) | 17 |
| *Associated Press*, 246 Mont. at 391, 804 P.2d at 379 | 17 |
| *Nelson v. City of Billings*, 390 Mont. 290, 296 (2018) | 17 |
| *State ex rel. Bonner v. Dist. Ct. of First Jud. Dist. in & for Lewis & Clark Cnty.*, 122 Mont. 464, 481–82, 206 P.2d 166, 175 (1949) | 18 |
| *Gottlob v. DesRosier*, 2020 MT 210, ¶ 8, 401 Mont. 50, 55, 470 P.3d 188, 192 | 20 |
| Mont. Const. art. III, § 3 | 21 |
| U.S. Const. art. VI, cl. 2 | 21 |
| *Steadman v. Halland (Mont.1982), 641 P.2d 448, 39 St.Rep. 343* | 21 |

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

| | |
|---|---|
| *Foster v. Kovich*, 207 Mont. 139, 139–51, 673 P.2d 1239, 1239–46 (1983) | 21 |
| *Montana Cannabis Indus. Ass'n v. State*, 2012 MT 201, ¶ 45, 51, 366 Mont. 224, 238–39, 286 P.3d 1161, 1171 | 22-23 |
| Montana Constitution, Article II—Declaration Of Rights, Sections 1. Popular Sovereignty, 3. Inalienable Rights, 4. Individual Dignity, 7. Freedom of Speech, Expression, and Press, 8. Right of Participation, 17. Due Process of Law, and 22. Excessive Sanctions | 28-29 |
| ARTICLE II Section 4. Individual Dignity – Montana Constitution | |
| Montana Code Annotated 2023; TITLE 49. HUMAN RIGHTS; CHAPTER 1. BASIC RIGHTS; Part 2. Basic Political Rights; Right To Hold Elected Office | 29-30 |
| AMENDMENT XIV. CITIZENSHIP; PRIVILEGES AND IMMUNITIES; DUE PROCESS; EQUAL PROTECTION; APPOINTMENT OF REPRESENTATION; DISQUALIFICATION OF OFFICERS; PUBLIC DEBT; ENFORCEMENT | 30 |
| *Village of Willowbrook v. Olech,* 120 S.Ct. 1073, 528 U.S. 562, 565 (2000) | 31 |
| *Lochner v. New York*, 198 U. S. 45 (1905) | 32 |
| *Monroe v. Pape*, 81 S.Ct. 473, 482 (1961) | 32 |
| *Carey v. Piphus*, 435 U. S. 247, 263-65 | 32 |
| MCA 7-3 *et. seq.* | 33 |
| MCA 7-3-176. Election of commission members--appointments | 33, 34, 40, 42 |
| MCA 13-1-403. Election deadlines for candidate filing, write-in candidacy, and withdrawal--election cancellation--election by acclamation | 34-35 |
| *Washington v. Glucksberg,* 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) | 36 |
| *Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) | 37, 40 |

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983

| | |
|---|---|
| *Seegmiller v. LaVerkin City*, 528 F.3d 762, 766–67 (10th Cir. 2008) | 37 |
| *Palko v. Connecticut*, U.S. 319, 325, 58 S.Ct. 82 L.Ed. 288 (1937) | 37 |
| *Chavez v. Martinez*, 538 U. S. 760, 775, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) | 36 |
| *Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1239 (11th Cir. 2004) | 37 |
| AMERICAN CONSTITUTION, FIRST AMENDMENT (update 2), page 1055, Author GEOFFREY R. STONE (2000) | 38 |
| *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, L.Ed.2d 396 (1982) | 38 |
| *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2.d 396 (1982) | 38 |
| *Hart v. O'brien*, 127 F.3d 424, 446 (5th Cir. 1995) | 38 |
| *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d (1999) | |
| *Collins v. Harker Heights*, 503 U. S. 115, 128 (1992) | 40 |
| ARTICLE II, DECLARATION OF RIGHTS, Section 1 – Popular Sovereignty, and Section 2 - Self-government Montana Constitution | 41 |

Complaint and Demand for Jury Trial – Granite County Commissioners, et. al., Montana - 42 USCA § 1983