**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| GARY L. SNYDER,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT C. ALDER, Granite County Commissioner, Chairman, in his official and personal capacity, PAUL G. KULASKI, Granite County Commissioner, in his official and personal capacity, BLANCHE McLURE, Granite County Commissioner, in her official and personal capacity, BLAINE BRADSHAW, Granite County Attorney, in his official and personal capacity, LUKE ULATOWSKI, Appointed Local Government Study Commissioner, in his official and personal capacity, GAIL LEEPER, Resigned/Former Local Government Study Commissioner, in her official and personal capacity, and ROBIN WIGHT, Resigned/Former Local Government Study Commissioner, Treasurer of Drummond, in her official and personal capacity,<br><br>Defendants. | CV 25-222-M-WWM<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS |

Plaintiff *pro se* Gary L. Snyder ("Dr. Snyder") filed his Complaint on December 31, 2025 (Doc. 1), seeking injunctive relief and costs for his removal

from his office as an elected member of Granite County's Local Government Study Commission ("LGSC") by the Granite County Commissioners ("GCC"). After an initial hearing on a pending motion and a subsequent order, Dr. Snyder amended his complaint on April 27th. (Doc. 17). He invoked federal jurisdiction under 42 U.S.C. § 1983, arguing that his removal from the LGSC violated his substantive and procedural due process and free speech rights. Dr. Snyder alleges that his removal from the LGSC violated his First Amendment rights and was the result of an "effort to dampen or eliminate [his] constitutional right to freedom of expression and speech." *Id.* at 13, 27-32. He further alleges that the removal violated his right to due process. *Id.* at 32-34.

Just one alleged constitutional violation "may form the basis of a § 1983 claim." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). However, the central question presented by this case is whether Dr. Snyder has a viable 42 U.S.C. § 1983 claim by virtue of being divested of his role as a LGSC member. Federal courts are courts of limited jurisdiction. Not all claims that may be cognizable in a state court are viable in federal courts. Whether the GCC silenced Dr. Snyder's voice as an elected member of the LGSC is not in question, but that does not resolve whether he may bring a federal case under § 1983 against the Defendants.

## I. Procedural Posture

On June 1st, Dr. Snyder filed Motion for Limited Summary Judgment and Brief in Support. (Docs. 21 and 22). On June 25th, Defendants filed a response, objecting that Dr. Snyder had failed to file a statement of undisputed facts, had failed to state a claim, had insufficiently pleaded jurisdiction, and that qualified and sovereign immunity applied. (Doc. 26). On June 29th, Dr. Snyder filed a reply and a Second Motion for Summary Judgment. (Docs. 29 and 30). The Court held a hearing on August 10th. (Doc. 38). Also pending is the Defendants' Motion to Dismiss and Brief in Support. (Docs. 18 and 19).[1]

At the hearing in August, the Court inquired about injunctive relief. Dr. Snyder clarified that he was not actually seeking injunctive relief but instead was exclusively seeking a determination that the Defendants' actions were *ultra vires* and void *ab initio*. The Court also heard arguments on jurisdiction that undergird the Defendants' Motion to Dismiss and their response to the two summary judgment motions. Following the hearing, the Court invited the parties to submit additional briefing on subject-matter jurisdiction. They did so. (Docs 39 and 40).[2]

---

[1] Dr. Snyder filed a response (Doc. 20), and Defendants filed a reply (Doc. 24). After a hearing on this initial motion on April 13, 2026, the Court required Dr. Snyder to file a more definitive statement.

[2] The Court must assure itself of subject-matter jurisdiction before taking up a number of pending motions in a separate order.

For the reasons described below, the Motion to Dismiss will be denied, in part. Dr. Snyder's Motions for Preliminary Injunction will be addressed by separate order.[3]

## II. Factual Background

This dispute arises from Dr. Snyder's election to, service on, and subsequent removal from the LGSC between November 2024 and July 2025. (Doc. 1 at 3-12). Dr. Snyder was elected to serve on the LGSC, along with Defendants Gail Leeper ("Leeper") and Robin Wight ("Wight"), in November 2024. *Id.* at 3-4. By statute, the LGSC consisted of three members. Mont. Code Ann. § 7-3-177. Dr. Snyder was elected to the LGSC by way of a state constitutional mandate. Article 11, Section 9, of the Montana Constitution provides:

> Approval by a majority of those voting in the decennial general election on the question of undertaking a local government review is necessary to mandate the election of a local government study commission. Study commission members shall be elected during any regularly scheduled election in local governments mandating their election.

[3] In the intervening time, Dr. Snyder has filed an "Emergency Motion and Combined Brief for Temporary Restraining Order and Preliminary Injunction Pursuant to Fed. R. Civ. P. 65(b)" and Declaration in Support. (Docs. 41 and 42, respectively). Dr. Snyder seeks to enjoin an upcoming ballot measure titled "Revised Plan of Local Government / Granite County Sub-Option 7" scheduled for the November 3rd general election. (Doc. 41 at 17). Dr. Snyder has also filed motions for the Court to issue subpoenas to take the emergency depositions of Bryan Senn and Sarah Graham. (Docs. 43 and 44, respectively). Defendants filed a Brief in Response (Doc. 46), contesting the grounds for injunctive relief of an election and questioning the Court's jurisdiction to order such relief. Dr. Snyder filed a Motion for Expedited Briefing and Reply on October 28th. (Docs. 48 and 49, respectively).

Montana law sets forth additional provisions relating to study commissions, including member qualifications, the term of service, and duties of elected members. *See* Mont. Code Ann. § 7-3-173 through -192.

The newly elected commissioners held their initial meeting on December 23, 2024. *Id.* at 4. Ms. Leeper and Ms. Wight resigned from the LGSC on April 28, 2025, and April 29, 2025, respectively. (Doc. 1-2 at 56-57). As the sole commissioner left on the LGSC, Dr. Snyder appointed himself as Chairman and Secretary. *Id.* at 58 and 60. Granite County Attorney Blaine Bradshaw ("Bradshaw"), who is a Defendant in this case, notified Dr. Snyder via email on May 13, 2025, that "[t]he Study Commission, at this point, can not [sic] take any formal action without a quorum" and that the Granite County Commissioners GCC had voted to advertise the vacant LGSC positions in the newspaper. (Doc. 1-2 at 61). The GCC appointed Luke Ulatowski to the LGSC on June 10, 2025, and installed him as its chairman. (Doc. 1-2 at 67, 115, 117). Dr. Snyder sought a writ of mandamus from the Montana District Court, Third Judicial District on June 24, 2025. (Doc. 1-2 at 42). On July 8, 2025, the GCC voted to remove Dr. Snyder from the LGSC. In a letter dated July 15th, the GCC informed Dr. Snyder that they had removed him from his "appointed position" by a unanimous vote, although they cited to no legal authority for Dr. Snyder's removal. (Doc. 1-2 at

124). There is no dispute over the fact that Dr. Snyder was elected, not appointed, to his LGSC seat.

The Montana Code specifies that "[a] vacancy on a study commission, including an ex officio member vacancy, must be determined in the same manner as a vacancy in municipal office as provided in 7-4-4111. A vacancy on a study commission must be filled . . . within 30 days of the date the vacancy occurs." *Id.* at -178(2). A vacancy in a municipal office occurs upon:

> (1) the death of the incumbent;
> (2) a determination pursuant to Title 53, chapter 21, part 1, that the incumbent is mentally ill;
> (3) the incumbent's resignation;
> (4) the incumbent's removal from office;
> (5) the incumbent's absence from the city or town continuously for 10 days without the consent of the council;
> (6) the incumbent's open neglect or refusal to discharge duties;
> (7) the incumbent's ceasing to be a resident of the city or town or, in the case of a city council member, ceasing to be a resident of the city council member's ward. This subsection does not apply to an appointed municipal officer who resides outside the city or town limits with the approval of the city or town governing body and within a distance of the city or town approved by the governing body.
> (8) the incumbent's ceasing to discharge the duty of office for a period of 3 consecutive months, except when prevented by illness or when absent from the city or town by permission of the governing body;
> (9) the incumbent's conviction of a felony or of any offense involving moral turpitude or a violation of official duties;
> (10) the incumbent's refusal or neglect to file an official bond within the time prescribed
> (11) the decision of a competent tribunal declaring void the incumbent's election or appointment.

Mont. Code Ann. § 7-4-4111. Subsection (4) clearly contemplates an "incumbent's removal from office," but the statutory language in context provides only for removal of an *appointed* officer. *See* Mont. Code Ann. § 7-4-4113 (stating "[t]he council, upon written charges to be entered upon their journal, after notice to the party, and after trial by the council, may remove any *nonelected* officer by vote of two-thirds of all the members-elect") (emphasis added). Thus, the section of code most directly addressing the duties of elected local government study commissioners is silent as to any permitted removal of the official, and the statute relating to municipal officers clearly does not apply to elected local government study commissioners, like Dr. Snyder. Aside from recall from public office, there seems to be no mechanism by which the GCC could divest Dr. Snyder from office. *See* Mont. Code Ann. § 2-16-603 ("[a]ny person holding a public office of the state or any of its political subdivisions, either by election or appointment, is subject to recall from office"). And yet, in a letter dated July 15, 2025, the GCC provided a letter to Dr. Snyder stating that they had removed him from his "appointed position" by a unanimous vote. (Doc. 1-2 at 124).

Dr. Snyder withdrew his mandamus request on July 16, 2025. (Doc. 1-2 at 68). He filed the pending case on December 31, 2025. (Doc. 1).

## III. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint when it fails to state a claim upon which relief can be granted. When ruling on a motion to dismiss, the Court is to accept the allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiff. *Gibson v. City of Portland*, 165 F.4th 1265, 1274 (9th Cir. 2026). The Court need not accept as true conclusory allegations or legal characterizations. *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981). His causes of action are limited to Defendants' conduct designed to exclude him from LGSC proceedings by removal, but they do not extend to other statements or activities outside of LGSC meetings.

### A. Subject-Matter Jurisdiction

A federal court may hear a case if it "arises under the Constitution or law of the United States." *Bell v. Hood*, 327 U.S. 678, 680 (1946) (citing previous version of 28 U.S.C. § 1331). Subject-matter jurisdiction may never be forfeited, and the Court has an independent obligation to determine whether it exists at each stage of the proceedings. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). When the Court lacks subject-matter jurisdiction, it must dismiss the case. *Id.*

There is no diversity in this case. *See* 28 U.S.C. § 1332. To qualify for federal question jurisdiction under 28 U.S.C. § 1331, "a right or immunity created

by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Phillips Prot. Co. v. Texaco, Inc.*, 415 U.S. 125, 127-28 (1974) (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936)). If the claim which grants the court jurisdiction is "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous," the case should be dismissed. *Leeson v. Transamerica Disability Income Plan*, 571 F.3d 969, 975 (9th Cir. 2012). Dr. Snyder's alleged federal cause of action is brought pursuant to 42 U.S.C. § 1983.

**B. Section 1983 of Title 42 of the United States Code**

Dr. Snyder contends that his factual allegations give rise to a claim under 42 U.S.C. § 1983.[4] That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To establish a claim under § 1983, a party must show a violation of a constitutional right secured by the United States Constitution and that the right was "'clearly

---

[4] The facts relied upon are from Plaintiff's Amended Complaint and documents attached to and referenced in the pleading, which is permissible on a motion to discuss based upon *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

established' at the time of the of defendant's misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987)). To establish § 1983 liability, a plaintiff must also show the violation was committed by a person acting under color of state law who personally participated in the deprivation of his rights. *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### 1. Substantive Due Process and Due Process

Section 1983 claims do not provide a standalone cause of action for state law privileges and immunities. *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981); *Martinez v. State of Cal.*, 444 U.S. 277, 284 (1980); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("the Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the states[.]'") (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Therefore, substantive due process claims are limited to only those that flow from the Fourteenth Amendment. However, § 1983 claims create a cause of action when federal due process is violated in the deprivation of a "liberty interest" created by state laws or policies. *Wilkinson v. Austin*, 545 U.S. 205, 221 (2005). "A state official's failure to comply with state law that gives rise to a liberty or property interest may amount to a procedural . . . due process violation, which can be

vindicated under 42 U.S.C. § 1983." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012).

Dr. Snyder contends that his removal violated Article XI, § 1 of the Montana Constitution and Mont. Code Ann. §§ 7-1-173–193. Article XI, § 1(b) states, "Study commission members shall be elected during any regularly scheduled election in local governments mandating their election," and does not create a mechanism for removal. Sections 173 through 193 are the statutory enactment of this concept. Most relevant to Dr. Snyder's claims, Mont. Code Ann. § 7-3-178(1) states, "[t]he term of office of study commission members begins on the day that their election to the study commission is declared or certified . . . and ends on the day of the vote on the alternative plan." This section does not provide a mechanism for termination. The study commission may adopt its own rules. Mont. Code Ann. § 7-3-181(4). The local governing body's only ability to affect the study commission once established is to increase the number of members and fill vacancies. Mont. Code Ann. §§ 7-3-177(2), 178(2).

"[T]here is generally no property interest in an elected office." *Khan v. City of Lodi*, 2023 WL 2728915, at *4 (E.D. Cal.) (compiling cases). There is similarly no right to continuing government employment. *Burcham v. City of L.A.*, 562 F.Supp.3d 694, 706 (C.D. Cal. 2022). A property interest from employment may arise when there are employee protections embedded in the civil service system,

while a liberty interest may arise where the removal "damages seriously one's standing and association in the community," and shows tangible loss. *Roley v. Pierce Cnty. Fire Protection Dist. No. 4*, 869 F.2d 491, 494-95 (9th Cir. 1989) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 572-73 (1972)).

The Montana Supreme Court has held that an elected official may only be removed through recall or conviction for official misconduct. *Geiger v. Dep't of Rev.*, 858 P.2d 1250, 1253 (Mont. 1993). Recall is a special process under the Montana Recall Act where those holding public office may be removed by the electorate. *Sheehy v. Comm. of Political Practices for State*, 458 P.3d 309, 321 (Mont. 2020) (McKinnon, J., concurring). Only those holding public office and lacking fitness, acting incompetently, violating their oath, or convicted of official misconduct or a felony may be recalled. Mont. Code Ann. § 2-16-603(1), (3). A public office requires, among other things, that the position "have some permanency and continuity and not be only temporary or occasional." Mont. Code Ann. § 2-16-602(2)(d). Removal by recall is meant to be cumulative, not a replacement for other methods of removal. Mont. Code Ann. § 2-16-611. A public officer or public employee of local government, as those terms are defined under Montana law, is subject to disciplinary action by the employing entity of a local government. Mont. Code Ann. §§ 2-2-102(8), (9)(a), 2-2-144(4).

At one point, the Montana Supreme Court held, "[t]he right of an elected public officer to possess and use an office and to exercise the privileges and rights therein to the exclusion of others until properly removed, certainly constitutes a property interest . . . ." *State ex rel. Ryan v. Norby*, 165 P.2d 302, 304 (Mont. 1946). However, this position quickly lost favor. *State ex rel. Bonner v. D. Ct. of First Jud. Dist. in Lewis & Clark Cnty.*, 206 P.2d 166, 169 (Mont. 1949) ("Public office is considered a public trust. . . . the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right"). This position was subsequently codified. Mont. Code Ann. § 2-2-103(1) ("The holding of public office or employment is a public trust, created by the confidence that the electorate reposes in the integrity of judicial officers, public officers, legislators, and public employees").

It is not clear that there is *any* proper procedure to remove Dr. Snyder beyond a conviction or other disqualification from office. Under the Montana Recall Act, Dr. Snyder does not hold a public office and is therefore not subject to recall because the LGSC is a temporary body. Similarly, the LGSC does not exercise any kind of rulemaking authority, causing its existence to be at odds with those envisioned under other applicable statutes. *See* Mont. Code Ann. § 2-2-102(8)(c).

It similarly appears that Dr. Snyder does not have a protected liberty or property interest in holding public office. Both federal and Montana law have determined that election to office does not create a property interest absent other circumstances. *See Khan*, 2023 WL 2728915, at *4 and *State ex rel. Bonner*, 206 P.2d at 169. Dr. Snyder has not shown he was ousted from office in such a way as to damage his reputation and professional associations. Accordingly, the Commission's failure to follow state law in removing him from office does not create a procedural due process cause of action under 42 U.S.C. § 1983.

**2. First Amendment**

Section 1983 may be used to vindicate First Amendment rights. "'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). The plaintiff must establish a causal connection between the defendant's retaliation and the injury. *Nieves*, 587 U.S. at 398. The connection must be such that the action would not have occurred absent retaliation. *Id.*

When the plaintiff is a government employee, certain otherwise unconstitutional restraints may be imposed on topics related to their employment. *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004). Beyond that narrow

exception, employees are entitled to the same protections "absent some governmental justification 'far stronger than mere speculation' in regulating it." *Id.* (quoting *United States v. Treasury Employees*, 513 U.S. 454, 465 (1995)). This protection requires balancing "the interest in the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. of Tp. High School Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968).

Similarly, elected officials may maintain § 1983 claims if they show that (1) they engaged in protected speech, (2) they were subjected to adverse action that would chill that speech, and (3) the adverse action was the result of the protected activity. *Boquist v. Courtney*, 32 F.4th 764, 774-75 (9th Cir. 2022) (citing *Blair*, 608 F.3d at 542-43). When an elected official is engaged in an official process pursuant to their elected role, they are not typically exercising a protected speech right. *Linthicum v. Wagner*, 94 F.4th 887, 892-95 (9th Cir. 2024) (holding that organizing a walkout to deny a quorum was not protected activity under the First Amendment because it was an exercise of legislative power); *Nev. Com'n on Ethics v. Carrigan*, 564 U.S. 117, 125-26 (2011) (holding that the power to vote as a legislator is not personal to the legislator). A threshold question is whether an elected official who speaks in their official capacity is entitled to any protection

under the First Amendment. If so, the additional two prongs must be evaluated. While a materially adverse event is often difficult to prove for an elected official, removal from office will easily satisfy this element. *Boquist*, 32 F.4th at 776-77; *Blair*, 608 F.3d at 544 ("for adverse, retaliatory actions to offend the First Amendment, they must be of a nature that would stifle someone from speaking out.... and have the effect of punishing someone for his or her speech.") (citing *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

Dr. Snyder contends that his "service as an elected Study Commissioner, and any related speech, advocacy, petitioning, or associational activity undertaken in connection with that service, constitutes protected activity under the First Amendment to the United States Constitution." (Doc. 22 at 17). He argues that his participation in the governmental review process as a study commissioner, pursuant to statute, is protected under his citizen speech rights. A *pro se* plaintiff is entitled to a generous reading of their filings. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a *pro se* filing], 'however inartfully pleaded' are held to 'less stringent standards than formal pleadings drafted by lawyers[.]'") (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

Dr. Snyder has met his burden to sustain his § 1983 claims under the First Amendment. "The manifest function of the First Amendment in a representative government requires that [elected officials] be given the widest latitude to express

their views on issues of policy. The central commitment of the First Amendment . . . is that 'debate on public issues should be uninhibited, robust, and wide-open.'" *Bond v. Floyd*, 385 U.S. 116, 135-36 (1966) (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 270 (1964)). Dr. Snyder's speech at LGSC meetings, while pursuant to his elected role, is firmly on matters of public concern. *Boquist*, 32 F.4th at 780 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Defendants concede as much. (Doc. 40 at 3). Dr. Snyder's ability to exercise his right to free expression in the course of activity within his official capacity is protected under the First Amendment.

"The second prong of the prima facie case is satisfied if the elected official was subjected to a 'materially adverse action.'" *Boquist*, 32 F.4th at 775 (quoting *Houston Comm. College Sys. v. Wilson*, 595 U.S. 468, 476-79 (2022)). Removal from elected office cannot be called anything other than a material adverse action, rising far above the level of censure, restriction, or recusal in other cases. *See Boquist*, 32 F.4th at 773; *Nev. Com'n*, 564 U.S. at 120-21; and *Wilson*, 595 U.S. at 482-83 (affirming censure of a board member elected by the public and exclusion of him from a meeting to discuss the lawsuit he brought against the board). "Neither Wilson nor Blair held that an adverse action against an elected official could never be sufficiently material to raise an actionable claim for First Amendment retaliation." *Boquist*, 32 F.4th at 776. "When considering those more serious

forms of sanctions [such as 'expulsion, exclusion, or any other form of punishment,'] against elected officials, the Court has confirmed that they may qualify as material adverse actions." *Id.* (quoting *Wilson*, 595 U.S. at 482). "In short, an adverse action against an elected official is material when it 'prevents the elected official from doing his job,' deprives him of authority he enjoyed by virtue of his popular election,' or otherwise prevents him from enjoying 'the full range of rights and prerogatives that came with having been publicly elected.'" *Boquist*, 32 F.4th at 777 (cleaned up) (quoting *Wilson*, 595 U.S. at 469 and *Blair*, 608 F.3d at 544 & n.4).

The Court has identified clear authority from this Circuit which confirms that permanent exclusion from executive sessions constitutes an adverse action because it deprives the official of the "'rights and prerogatives' of [their] elected office." *Holloway v. Clackamas River Water*, 739 Fed. Appx. 868, 869-70 (9th Cir. 2018) (unpublished) (citing *Blair*, 608 F.3d at 544). In *Holloway*, the Ninth Circuit found it appropriate to permit such an official to go forward on retaliation claims based upon the First Amendment. *Id.* at 870. "Courts have interpreted Bond to 'prohibit retaliation against elected officials for speech pursuant to their official duties when the retaliation interferes with their ability to adequately perform their elected duties.'" *Werkheiser v. Pocono Twp. Bd. of Supervisors*, 704 Fex.Appx. 156, 159 (3d Cir. 2017) (quoting *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 181

(3d Cir. 2015)). Exclusion is the effective deprivation of the official's current office: "[t]here is no allegation here that the failure to reappoint . . . in any way excluded him from Town Supervisors' meetings, interfered with his rights, privileges, or responsibilities as an elected official, or hindered his ability to fulfill his elected duties." *Werkheiser*, 704 Fed.Appx. at 183.

The present case and *Holloway* are distinguishable from the facts in *Boquist*, where the Court of Appeals found, "[b]ecause the plaintiff's 'authority as a member of the Board was unaffected,' and 'he retained the full range of rights and prerogatives that came with having been publicly elected,' he did not suffer a material adverse action, and therefore failed to make a prima facie showing of First Amendment retaliation." 32 F.4th at 776 (quoting *Blair*, 608 F.3d at 544). "[W]e are aware of no case upholding the expulsion or exclusion of elected officials due to their protected speech. To the contrary, the Supreme Court has held that a state legislature's refusal to seat an elected representative due to his statements criticizing the government's policy in Vietnam violated the official's First Amendment rights." *Boquist v. Courtney*, 32 F.4th at 782 (citing *Bond*, 385 U.S. at 136-37). "The First Amendment surely promises an elected representative . . . the right to speak freely on questions of government policy." *Wilson*, 595 U.S. at 468. Removal "implicated not only the speech of an elected official, it also implicated the franchise of his constituents." *Id.* at 481. Here, there is no dispute that Dr.

Snyder has been ejected from his position on the LGSC by the GCC and cannot perform his duly elected office. Accordingly, the Commission's removal of Dr. Snyder constitutes a materially adverse action.

Finally, the third prong of the *Boquist* test is satisfied because the GCC has only proffered retaliatory rationales for removing Dr. Snyder, and Defendants have made no serious argument that the GCC had legal authority to remove him from office. Where it is clear that the adverse action was in response to the protected speech, Plaintiff has plausibly met his burden to show that the speech "'played a part, substantial or otherwise,' in the retaliation." *Boquist*, 32 F.4th at 784 (quoting *Nieves*, 587 U.S. at 399). Accordingly, Dr. Snyder has plausibly pled his § 1983 claim with respect to the First Amendment, and this Court retains jurisdiction.

In making this finding, the Court does not extend § 1983 protection under the First Amendment to all elected officials for any minor adverse action. There are certain acts that Dr. Snyder may have taken in his official capacity as an elected official that involved speech not entitled to First Amendment protection. The political process subjects participants to certain unpleasantries not felt by private citizens. *See Blair*, 608 F.3d at 543-44 ("the First Amendment doesn't shield public figures from the give-and-take of the political process. . . . more is fair in electoral politics than in other contexts . . . . In fact, we *expect* political officials to cast votes in internal elections in a manner that is, technically speaking,

retaliatory, *i.e.*, to vote against candidates whose views differ from their own"). But the analysis is different when the elected official is precluded from speaking due to removal from the office to which he was elected. Accordingly, the Court agrees with the rationale articulated by courts in the Second Circuit, "elected officials enjoy no First Amendment protection from retaliation for political speech unless that retaliation strips them of their office, or their fundamental ability to function in that office." *King v. City of New York*, 581 F.Supp.3d 559, 570-71 (S.D.N.Y. 2022) (compiling cases).[5]

The Court relies upon the analysis of other courts. For example, in *Blair*, the plaintiff's ability to fulfill his responsibilities as an elected official were not impaired. *Blair*, 608 F.3d at 544 ("His authority as a member of the Board was unaffected; despite his removal as Board vice president, he retained the full range of rights and prerogatives that came with having been publicly elected. The

---

[5] None of the above-cited cases appear in the Defendants' Brief in Support of the Motion to Dismiss. While Defendants correctly note that "Plaintiff was not an employee" and that he "was at all times . . . a public official," they simply assume that the *Pickering* test applies without considering actual applicable authority for elected officials. (Doc. 19 at 7-8). Defendants acknowledged *Boquist* and *Blair* when specifically invited by the Court to brief the issue but give them only a superficial treatment: "Defendants argue that there is no case on point but given the aforementioned precedent it is likely that Plaintiff has satisfied his burden of jurisdiction alleging a violation of his First Amendment right." (Doc. 40 at 3). While the Court is obligated to apply the correct legal standard and discuss important authority even when the parties do not, "counsel should be mindful of providing accurate statements of the law for consideration or defense of motions." *Arnold v. Marriott Int'l*, 2025 WL 1919260, at *5 n.2 (W.D. Wash.); *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) ("we have the authority to identify and apply the correct legal standard, whether argued by the parties or not").

district court found Blair's removal from the Board leadership position didn't chill his speech, and the record supports that finding"). Of equal importance to this analysis is the *Blair* panel's observation that certain adverse actions against elected officials may be cognizable in § 1983 causes of action. *Id.* at 545, n.4. Although the school board's decision to remove Blair from his position as vice-president did not implicate his First Amendment protections, it "would be a different case had Blair's peers somehow managed to vote him off the Board or deprive him of authority he enjoyed by virtue of his popular election." *Id.*

Having determined that Dr. Snyder's § 1983 claim is plausible, the Court has subject-matter jurisdiction and the Motion to Dismiss will be denied on this basis.

### C. Defamation

Regarding Dr. Snyder's defamation claims, libel requires "false and unprivileged publication . . . that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation." Mont. Code Ann. § 27-1-802. Slander requires that communication charges a person with a crime, imputes to them the existence of a disease, injures their business, imputes impotence or want of chastity, or is naturally damaging. Mont. Code Ann. § 27-1-803. Defamation must be of such a kind that the Court "can presume as a matter of law that [it] will tend

to disgrace and degrade the plaintiff or cause him to be shunned and avoided." *Lee v. Traxler*, 384 P.3d 82, 87 (Mont. 2016) (cleaned up) (quoting *Ray v. Connell*, 371 P.3d 391, 395 (Mont. 2016)). To qualify as defamation, the words expressed cannot be sarcasm, hyperbole, innuendo, or inference and they cannot constitute a mere expression of opinion. *McConkey v. Flathead Electric Co-Op*, 125 P.3d 1121, 1130 (Mont. 2005).

The exact basis of Dr. Snyder's defamation claims is unclear from the allegation, but appears to pertain in part to "derogatory referencing" at the Commissioners' meetings. (Doc. 17 at 36-40). Specifically, Dr. Snyder takes issue with the Commissioners' confusion of the LGSC as a constitutional or county commission and the Commission's refusal to accept Dr. Snyder's recommendation to appoint Elena Gagliano to the LGSC due to disciplinary proceedings against her. (Doc. 17 at 19-20). Dr. Snyder also seems to take issue with the comments made at the June 24, 2025, Commissioners' meeting. (Doc. 17 at 26). At that meeting, the Commissioners discussed that Dr. Snyder had declared himself chair of the LGSC, took over LGSC meetings to discuss the Montana Constitution rather than government studies, and had served Granite County in a lawsuit purporting to be acting in his role as chair of LGSC. (Doc. 17-1 at 94). The Commissioners then adjourned and sent Dr. Snyder a letter informing him of a July 8th meeting where he could address whether removal was appropriate. (Doc. 17-1 at 94, 101, 103).

None of these factual allegations would be sufficient to sustain a claim for defamation. The derogatory referencing is not clearly defamatory and is also not evidently directed at Dr. Snyder, meaning it is at most an inference. While comments made at the June 24th meeting pertain to Dr. Snyder, two of them are verifiably true -- that he filed a suit against Granite County and that he appointed himself chair of LGSC -- and the statement that he "took over" LGSC meetings would likely be considered an opinion. Even if the latter comment were taken as a factual statement, such a banal comment does not rise to the exacting standard of defamation and would not expose Dr. Snyder to "hatred, contempt, [or] ridicule." Therefore, Dr. Snyder could not sustain a claim of defamation based on his allegations. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 18) is GRANTED IN PART AND DENIED IN PART. The Counts under the heading "Libel per se AND Slander per se" are dismissed.

The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 30th day of October, 2026.

WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE